Our next case on the call of the docket is Agenda No. 13, Case No. 115-469, Wells Fargo Bank, Appellant v. Katie McCluskey, Appellee Counsel for the Appellant. Please proceed. James Noonan Come on, Your Honors. May it please the Court, my name is James Noonan, and I'm here today before you on behalf of the Appellant, Wells Fargo Bank. This case is here because of a conflict between two appellate districts. The court below, the Second District, refused to follow the lead of the First District in the decision of Mortgage Electronics Systems, Inc. v. Barnes, which held that under Section 15-1508B, the Mortgage Foreclosure Law, a mortgagor was barred from bringing a motion to vacate a default judgment following the submission of the motion to confirm the sale. The First District held that to allow a borrower to vacate a default judgment after the sale would eviscerate the holding, sorry, would eviscerate the carefully worked out sale confirmation rules of the Illinois Mortgage Foreclosure Act, because it would allow a borrower to undermine that process and effectively get a restart in the case. The Second District below rejected the First District's reasoning on the grounds that the conflict, the way that it resolved the conflict was not supported by the language of the Mortgage Foreclosure Act. The Second District also concluded that it was not inconsistent to allow a trial court to vacate a default judgment following the sale, following the motion to confirm the sale, and effectively following the order of confirming the sale. It is this conflict which frames the issues presented by this appeal. And it's a simple, fairly simple question. Is allowing a motion to vacate a default judgment under Section 2-301E of the Civil Practice Act inconsistent with the sale confirmation and redemption rules of the Illinois Mortgage Foreclosure Law? If it is, then the Civil Practice Act must give way, because the Mortgage Foreclosure Law clearly and expressly provides that any other article of the Code of Civil Practice cannot be applicable to actions under this article. It is Wells Fargo's position that this Court should adopt the holding of the First District in Barnes for essentially three reasons. First, the Barnes rationale and decision is the only way to square the plain and clear language of the statutes involved. Second, the First District's rationale and decision is the only one that doesn't undermine the carefully worked out rules created by the Illinois legislature when they enacted the Mortgage Foreclosure Law, specifically relating to the termination of a borrower's redemption rights. Third, to follow the First District's lead on this process, which is a public policy favored by this State. Doesn't Section 1301 and 15-1508 aim to accomplish the same goal, promote fairness? If that is true, then why shouldn't 1301 be available as a remedy? Your Justice is referring to the provision of 1508B that allows a court to disallow a sale where justice was otherwise not done. I agree that the language is similar, but the difference is, in 1301E, it is vacating the judgments in the foreclosure case and basically putting a restart in the litigation. And under 1508B, if the court finds that justice was otherwise not done, all it does is disallow the sale. It does not restart the foreclosure and does not revest the borrower's redemption rights. It basically requires the mortgagee to re-hold the sale. And that sale will not be confirmed unless justice was otherwise not done, unless it meets the requirements of 1508B. Speaking of the requirements of 1508, may I ask a couple of questions about that? The actual language of the statute says, Upon motion and notice in accordance with court rules applicable to motions generally, which motion shall not be made prior to sale, the court shall conduct a hearing to confirm the sale. Now, that would seem to suggest that the statute itself is not triggered until a motion and notice in accordance with the court rules applicable has been filed. In your appendix, you set out the timeline of what occurred here, and you indicate that this, the motion to vacate the judgment that we're looking at was filed May 26th after the sale, but the motion asking for the order approving sale was not filed until August 30th. Now, if that's true, then the motion to vacate the judgment was filed after the sale, but before this section was triggered. The my understanding of the record is that the motion to confirm the sale was filed first, and in response to that motion, the borrower filed the motion to vacate the default. We know that the motion, I mean, your records, your, in your brief, you, not your record, you say that the motion to vacate the judgment was filed May 26th, and the motion for an order approving sale was 830. Yeah, the order. That was the entry of the order, but the motion, the motion to confirm the sale was filed prior to the motion to vacate. And you're going to be able to tell me where that is in the record, because that's not what your appendix says. Obviously, I know maybe I'm springing this on you, and I'm sorry, it may take you some time to find it. But it seemed, so let me ask the question. Is that critical? If, in fact, the motion requesting a confirmation order was not filed until after the motion to vacate was filed, does that change our analysis here? Fundamentally, it doesn't, and for the following reason, is that it is Wells Fargo's position here is that once the sale occurs, the borrower has lost all of their redemption. They no longer have an interest in the real estate other than a possessory interest in whatever lingering rights they have. Their sole remedy, if there is a remedy, is to basically have the sale reset if they're successful in objecting to the motion to confirm the sale. But in this case, and I think this Court held in Household Bank v. Lewis, the filing of the motion to confirm the sale was the triggering event for the objection process. But again, our position is that the borrower's right to vacate a default can't be brought after the hammer falls on the sale, irrespective of when the motion to confirm the sale is filed. Since this case involves statutory construction, we have to start there in determining what these statutes say and is there a conflict. Section 213.01e very clearly states that it is a discretionary tool to court. It says the court may, in its discretion, before final order or judgment, set aside any default, and 30 days after the final judgment can set aside any default. There is no or very limited discretion available to a court under Section 1508b. Under that section, the statute says that the court shall enter an order approving the sale, unless one of these four exceptions exist. The Mortgage Foreclosure Act and this Court have identified that the use of the word shall in that statute means that the trial court's obligation to confirm the sale is mandatory. So the court has the only discretion left to a trial court in a 1508b hearing is whether one of those four specific exceptions exist to disallow the sale, not to vacate a default judgment. Tellingly, not included in those four sections of 1508b is the right of a trial court to set aside a default, which is consistent with the idea that once the term in borrower's exemption rights have expired, the borrower would have no right to do that and there would be no reason for a court to allow a borrower to come into a case where he has no rights, he or she has no rights left to protect. So on one hand, we have a statute that gives a court wide discretion to vacate default judgments. On the other hand, we have a statute that severely limits a court's discretion in approving sales. These two are, these are restrictive because one deals with the sales process and one deals with the judgment process. The First District got it right in determining that those two cannot be reconciled. And in so doing, it was obliged to find that the conflict had to be resolved in favor of the Mortgage Foreclosure Act by virtue of the language of 1107a, which I quoted earlier. One thing I, the Second District I think missed, and it's something that I think is still of importance here and it's something we talked about a moment ago, which is that Section 213.01e and 1508b are not, and the mortgage foreclosure law I should say, are not completely incompatible. A mortgagor may bring a motion under 213.01e up to the time of sale. And that is, in a residential mortgage foreclosure case, that's typically 90 days or so after the judgment foreclosure is entered. In a commercial case, it could be shorter, up to 30 days. But nonetheless, the borrower's rights, the litigant's rights are still available up to that point. And that point is when he loses his rights. Those rights are lost at the termination of the redemption which precedes the sale. It is Wells Fargo's position that the court below got it wrong in rejecting Barnes. It got it wrong in finding there was no conflict. In fact, a close reading of that opinion shows that it avoided discussing whether there was conflict. All the Second District said was 213.01e does not eviscerate 1508b. But its greater error was in misreading the mortgage foreclosure law and finding that the provision of 1107a that the First District relied on in resolving conflicts was not applicable. The Second District, I submit, read the wrong section. It read a section that related to non-mortgage liens and encumbrances which have nothing to do with this case or with First District and Barnes. The Second District also, I think, advanced an unwarranted concern that construing the trial court to see that the right decision is entered. But as we discussed a moment ago, the court still retains a bit of discretion to disallow sales when justice is otherwise not done. Adopting the First District's ruling with respect to this issue is also consistent with the Mortgage Foreclosure Law's treatment of the mortgagor's redemption rights. Again, it provides, and it's very clear about this in two or three different sections, that once the sale is held, all rights of redemption are terminated. And it further says that once they're terminated, they can't be resurrected. So to allow a borrower to come into a case after their rights have been terminated and vacate that would be, in effect, to resurrect those rights. In my brief, I discussed in detail the purpose behind this section of the Mortgage Foreclosure Law. The legislature was very clear that in enacting the law, they wanted to change the way that the foreclosures are handled so that once the hammer falls, the redemption rights expire. Prior to the enactment of the Illinois Mortgage Foreclosure Law, the redemption rights lasted six and a half years. And when the sale, that wreaked havoc with buyers coming in who weren't getting titled to the property for some time, and it discouraged third-party bidding. So the other point I think should be made as to why this Court should adopt the holding in the First District's holding in Barnes, is that this is consistent with the public policies of this State, which favors the integrity of the judicial sales process. Again, the Mortgage Foreclosure Laws were amended in 87 to encourage third-party buyers to raise the value of bids at foreclosure sales, and to allow these lingering rights to proceed after the sale would discourage that. This Court held in Household Bank v. Lewis that the law favors this inability of foreclosure sales, and I quote, unless it substantively impacts the mortgagor's rights of redemption. But we know that upon the sale, the mortgagor no longer has a right of redemption, which means that the only policy remaining after sale is to preserve the integrity of the sales process. Therefore, it is Wells Fargo's position that this Court adopt the holding and rationale of the First District in Barnes, that 1508B limits the Court's discretion to one of the four specified grounds, and because it is more restrictive than Section 213.01e, it must take precedence pursuant to the conflict resolution provision found in Section 213.01e. Should this Court find that no conflict exists, I would submit that the Second District's opinion should still be reversed due to the error it found in the trial court's ruling. The Second District determined that the trial court abuses discretion in not vacating the default judgment. As this Court is well aware, the abuse of discretion standard is the most deferential standard of review available, with the exception of no review at all. The trial court record is clear that the Court considered prior motion to vacate and the contents of that motion. It considered the fact that the parties cut a deal to extend the sale process while the borrower tried to work out a loan resolution issue. It heard arguments from counsel, and it considered the proposed affirmative defenses or objections to the sale that the borrower had regarding standing and the sufficiency of the affidavit. It cannot be said that the trial court failed to employ conscientious judgment or that its decision exceeded the bounds of reason and ignored the principles of law. So, counsel, you're saying that there was a hearing on the merits of the motion as well as this issue about that somehow the fact that there had been an earlier motion that was filed and then withdrawn, the Court said you can't file a second one. You're saying there actually was a hearing on the merits? The record states that the Court considered the arguments. I find that in the brief. The trial court was thoughtful. It recalled the merits of the prior motion, which was lengthy and contained a good grasp of the facts. That's at the report of proceedings, page 7. And it found in its order that justice was otherwise not done. So although it didn't have a full-blown hearing on the merits of the motion, it took into consideration the papers before it and the arguments of the counsel and the proposed offenses, and that, coupled with the fact that the parties had struck this deal to kick this down the road in order for the borrower to work out a, to explore a loan modification, was enough to justify denying that motion. If in fact it's been suggested that that, not the merits, was the reason why the trial court denied the motion to vacate, could you move on a little bit more? Why would it be, and what legal theory are you basing your argument that this earlier agreement would bar the filing of this motion to vacate? I'm not suggesting, and I think the Second District was wrong to suggest, that the trial court said that the second motion was barred. I think it denied the motion because it felt that it would be unfair to the mortgagee, the plaintiff, to allow the borrower to come in several months, I can't remember how much time had passed, but quite a long time had passed, and to bring the motion again when it had this opportunity to explore a loan modification and it didn't work out. I don't think the court thought it was fair. I don't think it was fair to the mortgagor if in fact this were a fraudulent deal or if there was some genuine issue of justice not being done. That's true, but again. I'm just not sure I understand the equitable argument. Right. But again, the standard is an abuse of discretion. And I submit that the trial, that the record supports that the trial court did not just, did not completely not consider the motion at all, but actually took into account what happened in the case, the submissions of the earlier motion, and the ultimate defenses that the borrower was advancing. So I think the court was thoughtful and deliberate in denying this. I don't think the trial court took the position that because they filed it once, worked out to do this deal, that they were forever barred from doing it. I'd like to reserve my comments or any questions you have for my rebuttal, if I may. And thank you very much. Thank you. Good morning, Justices. My name is Mark Laws. Along with the co-counsels Julia Sopik and Lloyd Brooks, I represent the appellee, Katie McCluskey, in this case. May it please the Court. Best keep your voice up. I'm not sure what I'm doing. I will. May it please this Court. This case does involve two conflicts, as my opposing counsel mentioned. We have the conflict between the first and the second district. We also have the manufactured conflict between the two statutory provisions, 1301 of the Code of Civil Procedure and 1508 of the Illinois Mortgage Foreclosure Law. The first district in Mears v. Barnes has held that mortgagors in a mortgage foreclosure action may not bring a 1301 motion at any time after the sale has been conducted because to do so would essentially eviscerate the Illinois Mortgage Foreclosure Law. The second district has departed from this decision, stating that 1301s may be allowed and that it is within the sound discretion of a court to grant or deny such motions. If this court were to uphold Barnes and agree with the first district, that decision will essentially have the effect of causing judgments of foreclosure to go from being interlocutory non-final orders, as they are now, into final and unassailable orders that cannot be attacked at any time after judicial sale. Our position is that 1301 and 1508 are, in fact, not in conflict with one another. 1308 deals specifically with vacating judgments. 1508 deals with the method and procedure in which a court holds a hearing to confirm a judicial sale. This conflict between the two code sections is a recent creation. There's been no court before the Barnes court to ever find that 1301 does not apply in mortgage foreclosure cases. The banks have manufactured this conflict in order to intentionally remove the possibility of anyone attacking default judgments in mortgage foreclosure actions. The appellant advances the notion that somehow allowing 1301 motions to proceed in foreclosure cases would open the floodgates of litigation. There simply is not any shred of evidence to support such a claim. The appellant also cites Section 1107 of the IMFL for the notion that any inconsistent provisions within the code of civil procedure shall not apply in mortgage foreclosure actions. This concept is correct, but the application is wrong, and it is wrong in this case. It is wrong for 1301 motions. Section 1301 allows a court in its discretion to set aside defaults or final orders under terms which shall be reasonable within the court's discretion. Section 1508 provides the manner in which a court shall conduct judicial sale. The two code sections do not deal with the same issues. They may serve the same purpose. However, the two are written for two different intentions. Illinois is a judicial foreclosure state. By that, our legislators have chosen to have judicial oversight in the foreclosure process. Their intent there is to have judges oversee that process from beginning to end. In fact, the third paragraph of the IMFL states that the court maintains authority for the entire pendency of a foreclosure action. This is, as this court has noted, up until the final order which confirms the sale, meaning that judgments of foreclosure are non-final interlocutory orders, which are subject to the review of the court at any time. It is the duty of judges in foreclosure cases to ensure that justice is done between the parties on every case based on the facts, the law, every time. By requiring judicial oversight in foreclosure cases, the legislature clearly intended to have judges oversee this process. The entering of a default judgment is one of the most drastic actions that a court can take to punish somebody for disobedience to its commands. Now, due to the nature and the volume of foreclosure cases in this state, many judgments are by default. This in itself is not a problem. However, what would be a problem is that if these default judgments were to morph into final and unassailable orders just by the sheer fact that a sale has been conducted, thereby prohibiting people from bringing in legitimate motions to review or vacate these orders. Should it be any part of our analysis the fact that, in this case, the mortgage owner was well aware of the proceedings and there was this proposed agreement, as opposed to a situation where there had been no involvement until after the sale by the mortgage owner? Does that factor into our analysis? I think for this case, in determining the conflict, I don't think that does. I think that that fact would be something that can be reviewed at the circuit court level. It can be one of the factors, one of the overriding factors that you consider in determining whether or not it's proper to vacate a default judgment. Do you think that the trial court did take that into consideration and actually, as your opposing counsel argued, exercised discretion in denying the motion to vacate? I do not think he did. Actually, Your Honor, I was present at that hearing, and before I was allowed to argue, the court stopped me and made the determination that I cannot argue my motion because the defendant had already agreed to the 75-day stay. And despite the merit of my motion, whatever the contents were, he was not going to make a ruling on that motion, on the second one. How does your position sync with the mortgage provision that the mortgager's right of redemption expires at the time of the sale and can't be revived? Is this like an asterisk to say accept? I don't think so. I think that the redemption rights are there, and they exist three months after the judgment, and those rights inure to the bank, and they exist so that we do have stability, and that is the intent. However, if there's a good reason why the underlying judgment is faulty, that maybe there was a problem with the judgment amount, they entered the wrong amount, perhaps they foreclosed on the wrong property. These things do occasionally happen. There's legitimate reasons. If the underlying judgment is faulty, then you can't have a redemption period based off of that judgment. So it would restart. If it's vacated, it restarts the redemption period. It would restart the redemption period. So it runs the later of seven months from service or three months from the judgment. So, yes. But the trial court would have the ability to consider the factors and the fact that it would extend the redemption period into the 1301 motion of vacate. Does that undermine the stability of the sale procedures and the homeowner's foreclosure law? I don't think it changes them. As it stands right now, sales are not final until they're reviewed by the court anyways. You have to have that confirmation of sale, and then there has to be 30 days after that before it's final. Data is at sales. They don't have any rights on the property until that process is done, until there's that final order. I disagree with counsel when he says that homeowners, defendants, do not have any property rights starting on the sale date. I think they have rights on the property up until the final order by the court. As I mentioned, the courts have the discretion to determine 1301 motions as they are presented, and they can make a determination based on justice and the overriding factors, including the diligence of the parties, any meritorious defenses that may be presented, the hardships on the parties, and justice overall. The point is we want our trial court judges to have that discretion and to exercise it. If people are filing frivolous 1301 motions, they can be denied. By upholding Barnes and denying the ability of courts to even hear such motions, the only thing we're doing is taking away the discretion of the judges. We're not taking away the rights of people to file motions to attack judgments. In regards to 1508, counsel mentioned 1508, how you can somehow modify judgments within 1508. The actual application of 1508 within the courts is so narrow that they don't review anything outside of the actual sale when they're conducting a 1508 confirmation hearing. There's a recent first district appellate decision. It's called NAB versus LaSalle Bank, where the justice describes how difficult it is to actually review, actually find something that falls within that D4 category of substantial justice not otherwise being done. The courts only look at the terms of the sale, the notice, the fraud, the unconscionability of the sale. They're not looking at the judgment, underlying problems that might occur in the judgment, and there are occasionally legitimate problems with that judgment. There needs to be an avenue for people to review, have the courts review and modify these judgments. In terms of the abuse of discretion within this particular case, as I mentioned, I disagree that the trial court judge exercised his discretion. He found that there was some sort of an agreement between the parties to extend the sale. He chose not to hear the motion, my 1301, the second motion, on its merits, and he chose instead to say, you can't file it, the motion is denied, and he confirmed the sale on the same date. Finally, trial courts and trial court judges are best suited to handle their dockets and to manage their cases. We should leave the discretion to make decisions and review judgments within the hands of the trial court judges. By upholding Barnes, we are saying that trial court judges may not review their judgments after the sale has occurred. That means no matter the reason, you cannot vacate, review, or modify an interlocutory judgment of foreclosure that now has become essentially final and unassailable because of the Barnes holding. If this court agrees with Barnes, they are sending that message to judges. They are also essentially writing in a new provision into the IMFL which will morph judgments of foreclosure from what they have always been into these final orders. Thank you. Thank you. Mr. Bowe. Thank you. Briefly, Your Honor, I think what counsel is missing in his argument and analysis here is that the Barnes decision and the decision we ask this Court to follow today does not completely take away a trial court's authority to manage its cases and to vacate judgments and all that, but it does put a time limit on when it can do that. A borrower, you know, the mortgage foreclosure case up to the time of sale is like any other civil proceeding, and the mortgage foreclosure law recognizes that. So a borrower served with summons has 30 days to appear. If they don't appear, they can be held to default, or they can appear, file an answer, affirmative defense, motion to dismiss, whatever takes place in the civil proceeding. But once those issues are resolved and there is a finding in favor of the mortgage and the borrower has 30 days then to redeem the property, but once that, and then once that point, that 90 days expires or the 30 days in a commercial case, that's the red line, and that's what the Illinois legislature has said. We don't want the messiness associated with civil litigation cases to continue. Let that all happen before the sale. After the sale, we want a very limited way to review just the sale process because all those other issues have been resolved by this time. That's not to say that a borrower, as counsel alluded to, loses his or her rights to appeal. He doesn't. He can preserve all the objections and all the rulings in the trial court and bring those as an appeal once the order approving sale is entered. That's the final order in the mortgage foreclosure case. So the fact that no court before Barnes found a conflict with this is no moment. No court has looked for it or addressed it, as far as I can tell. It's only, I think, only become an issue now because of really I think the volume of foreclosures and the fact that the trial courts are being inundated with borrowers coming in at the 11th and sometimes the 13th hour moving to restart a foreclosure case after the sale, after the motion to approve the sale has been filed, after the order of confirmation has been filed, borrowers are coming in and asking to restart things. The courts are going, the first district anyway, has gone back to what I think the legislature intended was to put a stop to that and say, once this hammer falls, any litigation associated with the case is over. All we have left now is the sale and the approval of the sale. Kagan. Also, could you discuss Household Bank with me a little bit? Sure. Household Bank seems to, or maybe not even seems, actually does, talk about how it's the, in terms of the statute, they do not become operative until they have been invoked by a motion requesting confirmation of sale. In that case, the court vacated the judicial sale of the property. The bidder sought to contest the ruling. This court found that where the motion to confirm had been filed but withdrawn before any action was taken on it, the court found that a statutory prerequisite to the confirmation process was therefore eliminated, and correspondingly the mandatory provisions of this statute were not triggered. So here in that, in the household case, there was not a motion on file that set in flow then the confirmation process. And in fact, this Court allowed the vacating of the judgment. So here, in other words, a couple of things. One thing is, apparently the timing the household was looking at was not the sale. It was the confirmation of the sale. And because there was this interim between sale and then there didn't get to be a confirmation of sale, the court found that therefore there was a period where the judgment could be vacated.  Now, I think what the holding in household stands for is that any time before that, before the confirmation order is entered, it's the plaintiff's case. It's the mortgagee's case. Like any civil litigation, the mortgagee is free or the plaintiff is free to dismiss it. So the household case bank stands, as I submit for the proposition, that the mortgagee is entitled to dismiss the case at any time before there's an order of confirmation. So I don't think it has, it's germane to this case because in that case, they weren't seeking to set aside a default. The issue was trying to enforce the order confirming the sale. There was a third party bidder who wanted the court to confirm the sale. And the mortgagee had struck a deal with the mortgagor and basically dismissed the entire foreclosure lawsuit. So I don't think that's germane to the issues here because what we're asking, what we're here is what can a borrower do after the sale? And that is, those are his rights, other than some rights of possession, his rights have been terminated. The mortgagee is free to cut a deal with the borrower after that time. He's free to dismiss the case. He's free to do it all. But again, the legislature, I think, has expressed an intent that they want no more litigation after the sale. And that's why those rules were carefully worked out in 1987 when they enacted the mortgage foreclosure law. Does that answer your question? So unless your justices have any other questions, I want to thank you for your time. And I ask that this court reverse the ruling of the second judge. Thank you very much. Thank you. Case number 115469 Wells Fargo Bank. Appellant versus Katie McCluskey. Appellee is taken under advisement as agenda number 13. Mr. Noonan, Mr. Lawson, thank you for your arguments this morning.